99 So.2d 387 (1957)
Mellie C. LACOMBE, Plaintiff-Appellant,
v.
Thomas W. SHARP, Administrator of the Division of Employment Security of the Department of Labor of the State of Louisiana, et al., Defendants-Appellees.
No. 8716.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1957.
*388 Gravel, Humphries, Sheffield & Mansour, Alexandria, for appellant.
Lewis D. Dunbar, Marion Weimer, Baton Rouge, for appellees.
GLADNEY, Judge.
Mellie C. Lacombe brought this action to obtain judicial relief from an administrative ruling by the Board of Review of the Division of Employment Security of the Department of Labor which denied her claim for unemployment compensation. The District Court, after due consideration of the record presented to it, concluded the holding of the Board of Review was reasonably and substantially supported by evidence, and, therefore, affirmed the decision. Plaintiff has appealed from the court decree.
The rights of plaintiff are regulated by the Louisiana Employment Security Law, LSA-R.S. 23:1471 et seq., which sets forth specifically grounds which disqualify an employee for benefits under the act. Thus LSA-R.S. 23:1601 presents:
"An individual shall be disqualified for benefits:

* * * * *
"(2) If the administrator finds that he has been discharged for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances * * *."
In Burge v. Administrator, Etc., 1955, La.App., 83 So.2d 532, 535, after observing that Webster defines misconduct as wrong or improper conduct; bad behavior, unlawful behavior or conduct or malfeasance, this court stated:
"We are mindful that Section 1601 does not qualify the word `misconduct' with `willful' or other adjectives denoting relative degrees of culpability, but where used in similar unemployment compensation acts and judicially interpreted `misconduct' has been distinguished from mere heedlessness or carelessness."
The question posed for our consideration is whether the conduct of Mrs. Lacombe which led to severance of her employment should be construed as misconduct within the intent and meaning of the statute.
Our appellate courts have repeatedly recognized that judicial review of the findings of the Board of Review of the facts as presented to it upon a claim for unemployment compensation is expressly restricted by legislative mandate, LSA-R.S. 23:1634, and that where fraud is not an issue the courts are concerned only with determining if the findings of fact by the Board of Review are supported by evidence which can be found to constitute legal, competent and sufficient proof. This is to say that the courts may not invalidate the findings of fact by the Board of Review where supported by evidence entitled to judicial acceptance. It is equally clear, however, that where a court must ascertain the effect of the act, judicial responsibility embraces the question of whether such findings *389 are indicative of a disqualification under the statute. The Louisiana Employment Security Act falls within a class of social and economic legislation which is remedial in its nature, and as such should be so interpreted by the courts as to extend its benefits as far as possible within the bounds imposed by expressed legislative restrictions.
The record does not indicate any controversy with reference to material facts. Mrs. Lacombe was separated from her employment on November 26, 1956, when her employer, the McConnell-Dupree Clinic of Bunkie, notified her she had been replaced. The incidents leading up to this action are reflected in the uncontradicted testimony of claimant as presented to the Division of Employment Security.
She testified she had been employed by the clinic for more than five years during which time absences from her employment were necessitated by serious family illness on two occasions; the first of these occurred on May 5th and extended to June 5, 1956, and the second lasted from November 9 to November 25, 1956. The pertinent facts determined by the Board of Review relating to the last absence were:
"The facts show that the claimant was notified on November 8, 1956, that her older brother was ill in the hospital in Hattiesburg, Mississippi. She wanted to go to him, but could not find anyone to relieve her. On November 9, 1956, she was notified that her younger brother had had a heart attack in Jackson, Mississippi, and was not expected to live. She left after notifying the head nurse. Her brother died on November 12, and was buried on the 14th. There was a possibility of her older brother having to be operated on and he asked her to remain with him for awhile. Her brother was examined on November 17, 1956, and surgery was not advised. As her brother's health improved, she left and returned to Bunkie, La., on November 25, 1956. She called the doctor on November 26, and in the conversation she found that she had been replaced on November 25th."
In addition to the findings above set forth we deem it proper to record uncontroverted statements by claimant before the Administrative Board. These disclose that her older brother was in the hospital in a grave condition and surgery was not advised for it would be fatal. She acceded to his request to accompany him safely from the hospital to his home. There he was to remain in a dying condition, the doctor having advised Mrs. Lacombe the patient would not live more than six months. Upon accomplishing her mission which included several days of close attention, she returned to Bunkie to resume her employment. Her employers submitted for the record the following explanation of their action:
"Mrs. Mellie C. Lacombe, a former employee, was separated from this firm solely because it was necessary for her to be absent from work on several occasions for indefinite lengths of time due to serious illnesses in her immediate family.
"She was never guilty of misconduct while employed here. No protest is made by this firm in connection with her application for Unemployment Compensation Benefits."
The foregoing facts, in our opinion, are conclusive evidence claimant's absence was with leave first obtained from the employer, that no definite return date was considered, and the absent period was necessary due to serious illnesses in her immediate family. There is no indication claimant attempted to communicate with the employer in order to give advance notice when she would return and we infer such notice was not given. It was due to this omission the judge a quo upheld the action by the Board of Review denying the right to collect unemployment compensation benefits, saying:

*390 "The claimant has been a nurse's aid for five years and knew that the doctors in the clinic had to afford proper attention to their patients at all times and that her absence for a period of two weeks would be a definite handicap to the operation of the clinic. Under the circumstances of this case claimant should have at least taken the precaution to notify her employers that she was staying over with her oldest brother in Hattiesburg and her failure to do so constitutes a breach of her duty to her employer."
We are not in accord with the viewpoint above expressed. It is a matter of general knowledge the services of a nurse's aid are not as important and essential as that of a trained nurse. The degree of skill and experience required to fulfill claimant's position is not evidenced in the record. We find no reason to presume a necessary absence by a nurse's aid would be a definite handicap to the operation of the medical clinic. We are inclined to believe the vacancy could have been temporarily filled until plaintiff's return. Surely it is common knowledge among professional men, including doctors in small clinics that the services of their immediate employees create a close personal relationship over the years which recognizes reciprocal obligations and duties between the employer and the employed. Particularly is this true with reference to grave and serious personal problems. In the instant case claimant's absence, the necessity for which was attested to by her employer, furnishes no sound reason for her discharge. There was no excessive absenteeism, nor was there an unwarranted extension of the leave of absence. The time of return was not predetermined.
We find that under the circumstances herein found to exist the reason for Mrs. Lacombe's absence or extended leave was real and compelling, even though purely of a personal nature. What effect upon her employer a request for additional leave or notice of the date of her return would have had, we cannot surmise. The record fails to indicate Mrs. Lacombe was not justified in thinking her leave of absence extended as necessary and was entirely contingent upon conditions she found to exist.
The courts of some of the other states having a similar statute have recognized family obligations may furnish real and compelling reasons for leaving employment and the pressure thereof may transform what is ostensibly voluntary unemployment into involuntary unemployment. See Pa.Mee's Bakery v. Unemployment Compensation Board of Review, 162 Pa.Super. 183, 56 A.2d 386Bliley Elec. Co. v. Unemployment Compensation Board of Review, 158 Pa.Super. 548, 45 A.2d 898; Ind.Hollingsworth Tool Works v. Review Board of Ind. Emp. Sec. Division, 119 Ind.App. 191, 84 N.E.2d 895, 81 C.J.S. verbo Social Security and Public Welfare § 168, p. 256.
Perhaps the most that can be said as to the fault, if any, of claimant, is that her failure to notify her employers at a time of emotional stress was an act of thoughtlessness. We cannot classify such an act as misconduct within the meaning of the statute under consideration. It is therefore, our conclusion that the judgment from which appealed is in error and should be reversed.
For the reasons assigned, the judgment from which appealed is annulled and set aside, and the case is remanded to the Board of Review, Division of Employment Security of the Department of Labor of the State of Louisiana, which agency is ordered and directed to recognize claimant's eligibility to unemployment compensation benefits under the provisions of the Louisiana Employment and Security Law, and cause payment to be made in accordance with law.
Reversed and remanded.