"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."

"Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

In express terms, Article 2439 requires the concurrence of the thing sold, the price and the consent for the perfection of the contract of sale. If the thing sold has not come into existence, as in the instant case, the concurrence is lacking.[5]

Article 2456 provides for the vesting of title in the purchaser by operation of the law prior to actual delivery. For the transfer of title to be operative under the Article, the object of the contract must exist in a deliverable state. The law does not presume to pass title to anything other than the object of the contract.

20 Louisiana Law Review 522, 540; 46 Am.Jur., Sales, Section 430, pp. 598–599; 77 C.J.S. Sales § 254, pp. 1042–1043.

We have considered the several decisions cited by plaintiff, including Searcy v. Gulf Motor Co., La.App., 37 So.2d 445 and Mossy Motors v. McRedmond, La.App., 12 So.2d 719, but find them to be inapplicable to the instant case.

We conclude, as did the Court of Appeal, that the plaintiff, Plaquemines Equipment & Machine Co., Inc., has no title to the property in controversy.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

157 So.2d 886

**DAMERON–PIERSON COMPANY, Ltd.**

v.

**Lester BRYANT and Richard E. Brown, Jr., Administrator of the Division of Employment Security, Department of Labor, State of Louisiana.**

No. 46593.

Nov. 12, 1963.

Rehearing Denied Dec. 16, 1963.

5. See Gant v. Palmer, La.App., 10 So.2d 523 and Hearon v. Davis, La.App., 8 So. 2d 787.

Marion Weimer, Melvin L. Bellar, James A. Piper, Baton Rouge, for defendant-appellant.

Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, Kenneth W. Ford, New Orleans, for appellees-respondents.

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, LSA–Const. of 1921), we directed Certiorari to the Court of Appeal, First Circuit (148 So.2d 388; 150 So.2d 587, 244 La. 125), in order that we might review its judgment affirming a judgment of the Nineteenth Judicial District Court, which:

    (a) Annulled and set aside a decision of the Board of Review for the Division of Employment Security, Department of Labor.

    (b) Decreed that all wage credits of Lester Bryant, claimant for unemployment compensation benefits, earned with plaintiff, Dameron-Pierson Company, Ltd., during the base period of his claim filed October 13, 1960, be cancelled and removed from all consideration in connection with said claim.

    (c) Decreed that any benefits paid to Lester Bryant under his claim filed October 13, 1960 and charged against the experience rating record of Dameron-Pierson Company,

Ltd., be cancelled and removed from the records of the said Dameron-Pierson Company, Ltd.

The principal issue presented for our determination is whether Lester Bryant, a former employee of Dameron-Pierson Company, Ltd. (hereinafter designated as Dameron-Pierson) and a claimant for unemployment compensation benefits, is entitled to wage credits from Dameron-Pierson or whether he is deprived of such credits under LSA–R.S. 23:1601(2).

Initially, we think that it is pertinent to remark that in Louisiana the employer and not the employee is assessed for contributions to the unemployment compensation fund which is administered by the Administrator of the Division of Employment Security of the Department of Labor of the State of Louisiana. LSA–R.S. 23:-1531. An employer's contribution shall equal two and seven-tenths percentum of wages paid by him during each calendar year except as otherwise provided. LSA–R.S. 23:1532 and 34. Generally, experience rating records determine other percentage contributions. LSA–R.S. 23:1533, 35 and 36. "Base Period" means the first four of the last five complete calendar quarters immediately preceding the first day of an individual's benefit year. LSA–R.S. 23:1472 (4).

The facts of record disclose that on October 28, 1960, the Louisiana Division of Employment Security at Baton Rouge, Louisiana, made the following Determination with respect to a claim for unemployment compensation benefits filed by Lester Bryant on October 13, 1960:

"In accordance with provisions of the Louisiana Employment Security Law the following determination has been made:

"You have been disqualified for benefits from 7–19–60 until you have earned wages equal to ten times your weekly benefit amount, or $350.00. (See reverse side Section 1601(2).)
" * * *

"For the Following Reason: You were fired for drinking on the job and because you were involved in an automobile wreck while operating a company vehicle: This is misconduct connected with your work."

On October 28, 1960, in connection with his claim, Bryant stated, "I worked approximately 9 years with Dameron-Pierson. I had a wreck while driving the company truck but I was not drinking. I had one beer at noon while I was eating dinner. I never drank on the job." On the same date, the interviewer found that "Claimant was fired for drinking on the job and for wrecking a company vehicle. This is misconduct connected with his work."

Bryant appealed the above Determination to the Board of Review for the Division

of Employment Security, but he failed to appear at the time and place specified for the hearing of the appeal. After a review of the facts, the Appeals Referee found that a modification of the previous findings was not justified. The administrative Determination, from which the appeal was filed, was affirmed on December 2, 1960; no mention was made in the affirmation with respect to wage credits, and no appeal was taken in the matter. The delay for appeal expired on December 12, 1960.

A renewed claim for unemployment compensation was filed by Bryant on March 16, 1961. On March 24, 1961, the Louisiana Division of Employment Security found that his disqualification had been removed under LSA–R.S. 1601(2), because: "You submitted proof of having earned ten times your weekly benefit amount since disqualification and you left your last work under non-disqualifying circumstances." [1]

Dameron-Pierson was notified that Bryant's disqualification had been removed, which meant that its contribution fund could be assessed for Bryant's unemployment compensation benefits. It appealed from this second Determination of the Louisiana Division of Employment Security. In affirming the decision of the Appeals Referee, the Board of Review held:

"The record shows that a claim was filed for benefits on October 13, 1960. The claimant was disqualified for having been discharged for misconduct connected with the employment, and he filed an appeal. The Appeals Referee upheld the Agency determination. No further appeal was filed. On March 16, 1961, he filed a re-newed claim for benefits and submitted a certificate of earnings showing a total of $438.56, and indicated that he was separated from the subsequent employment under non-disqualifying circumstances.

"The evidence shows that the claimant has submitted evidence of subsequent earnings which are sufficient to satisfy the original disqualification.

"There is sufficient evidence to support the findings that the claimant is eligible for benefits.

---

1. "An individual shall be disqualified for benefits: * * * (2) If the administrator finds that he has been discharged for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances. In addition, if the administrator finds that such misconduct has impaired the rights, damaged or misappropriated the property of or has damaged the reputation of a base period employer, then the wage credits earned by the individual with the employer shall be cancelled and no benefits shall be paid on the basis of wages paid to the individual by such employer." LSA–R.S. 23:1601 (2).

"IT IS ORDERED that the decision of the Appeals Referee be affirmed."

Dameron-Pierson then filed this proceeding in the district court; the judgment supra was rendered.

On appeal, the Court of Appeal reasoned that even though the Appeals Referee's decision of December 2, 1960 was silent as to wage credits, "From a reading of LSA–R.S. 23:1601(2) in light of LSA–R.S. 1:3 pertaining to interpretation of statutes it appears it was the administrator's duty to cancel the wage credits earned with the employer, as the word 'shall,' as used in the statute, is mandatory rather than permissive. The employer had the right to rely on the presumption that the Administrator would perform his duty as required under the statute. * * *" The Court concluded that since Dameron-Pierson has appealed at the time the Administrator determined that Bryant's disqualification was removed and that his wage credits with Dameron-Pierson were not cancelled under LSA–R.S. 23:1601(2), it appealed timely.

Relator submits in this Court that the Court of Appeal erred:

"(a) In holding that, based on the facts as contained in this record, the administrator was under a mandatory duty, as a matter of law, to cancel all of the wage credits earned by the claimant,

Lester Bryant, with Dameron-Pierson Company, Ltd., primarily for the reason that this holding is based on an assumption which does not appear to be borne out by the record.

"(b) In holding that Dameron-Pierson Company, Ltd., was justified in believing that the administrator would, without any further action on its part, cancel all wage credits earned by Bryant with said company.

"(c) In holding that the notice of initial determination did not notify Dameron-Pierson Company, Ltd., that Bryant's wage credits had been cancelled by the administrator, and concluding therefrom that the said Dameron-Pierson Company, Ltd., had the right to assume that such wage credits had been cancelled when in fact they were not.

"(d) In holding that the appeals referee's decision of December 2, 1960, which became final on December 12, 1960, did not preclude Dameron-Pierson Company, Ltd., from later urging that Bryant's wage credits earned during his base period should be cancelled."

Dameron-Pierson was a "Base Period" employer; LSA–R.S. 23:1601(2) recites

that if the Administrator finds that an employee's misconduct has damaged the property of a base period employer, "then the wage credits earned by the individual with the employer shall be cancelled and no benefits shall be paid on the basis of wages paid to the individual by such employer." Dameron-Pierson urges that under the facts of record, it is entitled to a cancellation of wage credits earned by Lester Bryant.

The initial Determination of the Administrator, October 28, 1960, supra, sets forth that Bryant was involved in an automobile wreck while operating a company vehicle, and that such action was misconduct connected with his work. The Determination, as stated supra, is silent as to the matter of wage credits; it is also silent as to whether Bryant damaged Dameron-Pierson's vehicle. However, the Determination refers to LSA–R.S. 23:1601(2) by stating: "(See reverse side Section 1601(2).)"

LSA–R.S. 23:1624 provides that an agent designated by the Administrator shall take the claim, and that he shall make a determination promptly; that this determination shall include a statement as to whether or not benefits are payable, and if a decision is made that benefits are not payable, the agent shall state reasons therefor. LSA–R.S. 23:1625 provides that notice of determination, together with the reasons therefor, shall be promptly delivered to the claimant or mailed to his last known address.

As stated supra, the interviewer or agent assigned to investigate Bryant's claim found that Bryant was fired for drinking on the job and for *wrecking a company vehicle*. He stated that such action was misconduct connected with Bryant's work.

There is no allegation of record that Bryant was not apprised of the interviewer's findings, nor is there any allegation that the Administrator did not know of them; in fact, they were made on the same day as the Administrator's Determination— October 28, 1960. The fact that the interviewer employed the word "wrecking" instead of the work "damaging" is of no significance; that words are synonomous. See, Webster's New World Dictionary, College Edition, "wreck, v.t. to cause the wreck of; destroy or damage badly." [2]

Under the circumstances herein, we are impelled to conclude that any omission in recitation in the Administrator's Determination of October 28, 1960 did not lead Bryant into a false sense of security, nor did it lead the Administrator into a belief that he (the Administrator) was not charged with responsibility to comply with LSA–R.S. 23:1601(2). This is particularly true

---

2.. The Administrator does not specifically and categorically deny that Bryant damaged a company vehicle. His contentions are based upon technicalities, so as to excuse Bryant from the effects of his own actions.

since the Administrator mentioned the statute in his Determination.

"* * * Misconduct, within the meaning of the Unemployment Compensation Act, excluding from its benefits an employee discharged for misconduct, must be an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, and a disregard of standards of behavior which the employer has a right to expect of his employees. 48 Am.Jur., p. 541, 'Social Security, Unemployment Insurance and Retirement Funds', Sec. 38; 81 C.J.S. Social Security and Public Welfare Sec. 162, pp. 245–247. In determining, however, what constitutes misconduct, the standard to be applied is that of the employment contract, expressed or implied, which fixes the worker's duties in connection with his work, viewed in the light of the employer's duties, responsibilities, and obligations to the employee. Without question loyalty, consideration and cooperation are due by the employee to the employer— the laborer should be worthy of his hire. * * *" Sewell v. Sharp, La.App., 102 So.2d 259. See, Gatlin v. Brown, La.App., 154 So.2d 224; Beaird-Poulan, Inc. v. Brady, La.App., 154 So.2d 589; Fruchtzweig v. Southern Specialty Sales Company, 149 So.2d 623; Horns v. Brown, 243

La. 936, 148 So.2d 607; Smith v. Brown, 147 So.2d 452; Burge v. Administrator, Etc., La.App., 83 So.2d 532; 41 A.L.R.2d 1155; 81 C.J.S. Social Security and Public Welfare Sec. 162, p. 245.

In Lacombe v. Sharp, La.App., 99 So.2d 387, the Court ably stated:

"Our appellate courts have repeatedly recognized that judicial review of the findings of the Board of Review of the facts as presented to it upon a claim for unemployment compensation is expressly restricted by legislative mandate, LSA–R.S. 23:1634, and that where fraud is not an issue the courts are concerned only with determining if the findings of fact by the Board of Review are supported by evidence which can be found to constitute legal, competent and sufficient proof. This is to say that the courts may not invalidate the findings of fact by the Board of Review where supported by evidence entitled to judicial acceptance. It is equally clear, however, that where a court must ascertain the effect of the act, judicial responsibility embraces the question of whether such findings are indicative of a disqualification under the statute. The Louisiana Employment Security Act falls within a class of social and economic legislation which is remedial in its nature, and as such should be so interpreted by the

courts as to extend its benefits as far as possible within the bounds imposed by expressed legislative restrictions." See, Burge v. Administrator, Etc., La. App., 83 So.2d 532.

We are constrained to conclude in the instant case that on October 28, 1960, the Administrator found Lester Bryant guilty of such misconduct as would preclude his receiving wage credits from Dameron-Pierson; having made such a finding, the Administrator was under a mandatory duty as prescribed by LSA–R.S. 23:1601(2) to cancel or erase the wage credits earned by Lester Bryant with Dameron-Pierson. Dameron-Pierson was under no duty to appeal from the December 2, 1960 decision of the Appeals Referee. It was justified in its belief that the Administrator would perform the mandate of the statute. It timely appealed when the Administrator, on March 24, 1961, made his finding that Bryant's disqualification had been removed and that he was entitled to wage credits from Dameron-Pierson.

" * * * Public officers must perform the duties prescribed by law in a legal and proper manner, and they are not excused from compliance by statutory omission or inconsistencies that may render vague exactly how or when the act shall be done. The law does not permit a public officer to substitute his own judgment as to the best means of performing his official duties, if

such is contrary to the plain provisions of the statute, although in so doing he may not have an evil or corrupt motive and no loss may result to the public. * * * However, when an official duty is imposed by statute and no specific method is prescribed for performing it, the officer must nevertheless comply with the statutory requirement, if it is reasonably possible to do so, and may adopt any mode reasonably suitable to carry the duty imposed into effect.

"In the performance of their duties, public officers are governed by the existing law, including statutes, constitutional provisions, and judicial construction placed thereon by the courts, and their oath to obey the constitution does not impose on them the duty or obligation to determine whether a statute is constitutional before they obey it. Accordingly, officers must obey a law found on the statute books until, in a proper proceeding, the courts have passed on its constitutionality, but this rule has exceptions." 67 C.J.S. Officers § 114, pp. 403–404.

" * * * Laws are presumed to be constitutional until the contrary is judicially established; the officers upon whom have been imposed the duty of executing those laws are without authority to oppose their execution, however clear it may appear to them that the statutes contravene the Constitu-

tion. \* \* \*" Smith v. Flournoy, La. App., 117 So.2d 320.

"\* \* \* It cannot be presumed that state officials would exercise the authority vested in them by the Legislature in an unconstitutional manner \* \* \*". Woodard v. Reily, 244 La. 337, 152 So.2d 41, 58; Superior Oil Company v. Reily, 234 La. 621 100 So. 2d 888; Blaize v. Hayes, 204 La. 263, 15 So.2d 217; Sweet v. Brown, La. App., 125 So.2d 261.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed.